IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| IN THE MATTER OF THE SEIZURE OF $102,842.00 AT SANTANDER BANK STORED IN ACCOUNTS (1) 8954499708 and (2) 8291059276 | Case No.  25-mj-234-01/02-TSM |

**AFFIDAVIT IN SUPPORT OF SEIZURE WARRANT**

I, Special Agent Christopher McMahon, being duly sworn, hereby depose and state as follows:

**INTRODUCTION**

1.      I am a Special Agent with the United States Secret Service ("USSS").  I have been so employed since May 2014.  I have completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Center as well as the Special Agent Training Course at the USSS James J. Rowley Training Center. These programs provided training regarding counterfeit currency, financial crimes, electronic crimes, fraud, and criminal investigations.  I have completed advanced cyber training to include the Network Intrusion Program.  I was previously assigned to the New York Field Office, Electronic Cyber Task Force, where I conducted money laundering and cyber investigations.  Since being employed with the USSS, I have participated in the execution of numerous search warrants, including those for online accounts, such as email accounts, online storage accounts, and other online communication accounts.  I am currently assigned to the Manchester Resident Office, Manchester, New Hampshire.  Prior to joining the USSS, I worked as a Police Officer for the Prince George's County Police Department from November 2012 to May 2014.

**PURPOSE OF THE AFFIDAVIT**

2.      I offer this Affidavit in support of an application for a combined criminal and civil

seizure warrant for a total of $102,842.00 (the "SUBJECT FUNDS") on deposit at Santander Bank between account number 8954499708 ("Target Account 1"), registered in the name of Person 1, and account number 8291059276 ("Target Account 2"), registered in the name of Company A, which belongs to Person 1.

3. As set forth below, I submit there is probable cause to believe that the SUBJECT FUNDS are subject to forfeiture to the United States:

   a. pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 982(a)(1) because they are property involved in a money laundering transaction or attempted transaction in violation of 18 U.S.C. § 1956 and/or 18 U.S.C. § 1957, or are property traceable to such property;

   b. pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) because they are property constituting, or derived from, proceeds traceable to one or more wire fraud offenses in violation of 18 U.S.C. § 1343 and/or a wire fraud conspiracy in violation of 18 U.S.C. § 1349; and

   c. pursuant to 18 U.S.C. § 982(a)(2)(A) as property constituting, or derived from proceeds obtained, directly or indirectly, as the result of a violation of 18 U.S.C. § 1343, or a conspiracy to violate 18 U.S.C. § 1349, affecting a financial institution.

4. Money laundering, attempted money laundering, and conspiracy to commit money laundering in violation of 18 U.S.C. §§ 1956 or 1957, wire fraud in violation of 18 U.S.C. § 1343, and conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349 are hereinafter collectively referred to as the SUBJECT OFFENSES.

5. The facts in this affidavit are based on my personal observations, my training and experience, and information obtained from other law enforcement officers, bank investigators, and

witnesses. This affidavit is intended to show there is sufficient probable cause for the requested warrant. It does not purport to set forth everything I know about this investigation.

## APPLICABLE STATUTES

6. As to civil forfeiture, under 18 U.S.C. § 981(a)(1)(A), "[a]ny property, real or personal, involved in a transaction or attempted transaction in violation of [18 U.S.C. § 1956 or 18 U.S.C. § 1957], or any property traceable to such property" is subject to forfeiture to the United States.[1]

7. Additionally, under 18 U.S.C. § 981(a)(1)(C), "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting a 'specified unlawful activity' (as defined in [18 U.S.C. § 1956(c)(7)]), or a conspiracy to commit such offense" is subject to forfeiture to the United States. Pursuant to 18 U.S.C. § 1956(c)(7)(A)— incorporating any act or activity constituting an offense listed in 18 U.S.C. § 1961(1) (except an act which is indictable under Title 31, Chapter 53, Subchapter II)—any act which is indictable under 18 U.S.C. § 1343 or 18 U.S.C. § 1956 constitutes a "specified unlawful activity."

---

[1] It is a violation of 18 U.S.C. § 1956(a)(1)(B)(i) to, "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conduct[] or attempt[] to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—knowing that the transaction is designed in whole or in part—to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity[.]"

It is a violation of 18 U.S.C. § 1957(a), in the circumstances set forth in 18 U.S.C. § 1957(d), to knowingly engage or attempt to engage in a monetary transaction in criminally derived property of a value greater than $10,000 derived from specified unlawful activity.

Pursuant to 18 U.S.C. § 1957(f)(1), a monetary transaction includes "the deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce, of funds or a monetary instrument . . . by, through, or to a financial institution . . . ."

Pursuant to 18 U.S.C. § 1956(c)(6)(A), a financial institution includes any financial institution as defined in 31 U.S.C. § 5312(a)(2) or regulations promulgated thereunder. Pursuant to 31 U.S.C. § 5312(a)(2)(J), a financial institution includes "a currency exchange, or a business engaged in the exchange of currency, funds, or value that substitutes for currency or funds[.]"

8. As property subject to civil forfeiture under 18 U.S.C. § 981(a), the SUBJECT FUNDS may be seized pursuant to 18 U.S.C. § 981(b).

9. As to criminal forfeiture, under 18 U.S.C. § 982(a)(1), "[t]he court, in imposing sentence on a person convicted of an offense in violation of [18 U.S.C. § 1956 or 18 U.S.C. § 1957] shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property."

10. Additionally, under 18 U.S.C. § 982(a)(2)(A), "[t]he court, in imposing sentence on a person convicted of a violation of, or a conspiracy to violate . . . [18 U.S.C. § 1343], affecting a financial institution . . . shall order that the person forfeit to the United States any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of such violation."

11. Additionally, under 18 U.S.C. § 981(a)(1)(C), applicable pursuant to 28 U.S.C. § 2461(c), "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting a 'specified unlawful activity' (as defined in [18 U.S.C. § 1956(c)(7)]), or a conspiracy to commit such offense" is subject to forfeiture. Pursuant to 18 U.S.C. § 1956(c)(7)(A)— incorporating any act or activity constituting an offense listed in 18 U.S.C. § 1961(1) (except an act which is indictable under Title 31, Chapter 53, Subchapter II)— any act which is indictable under 18 U.S.C. § 1343 constitutes a "specified unlawful activity."

12. As property subject to criminal forfeiture under 18 U.S.C. § 982(a)(1), 18 U.S.C. § 982(a)(2)(A), and 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), the SUBJECT FUNDS may be seized pursuant to 21 U.S.C. § 853(f), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c).

13. With respect to seizure, 21 U.S.C. § 853(f) provides that a court may issue a criminal seizure warrant when it "determines that there is probable cause to believe that the property to be seized would, in the event of conviction, be subject to forfeiture and that an order under [21 U.S.C. § 853(e)] may not be sufficient to assure the availability of the property for forfeiture . . . ."

14. The Court should conclude that a restraining order under section 853(e) would be inadequate, because the SUBJECT FUNDS are currently in the custody of Santander Bank and need to be seized and placed into the federal forfeiture system so that their value can be preserved, for potential return to victims.

15. As to civil forfeiture, as relevant here, the government's seizure of any property (other than real property and interests in real property, as addressed in 18 U.S.C. § 985) must be pursuant to a warrant "obtained in the same manner as provided for a search warrant under the Federal Rules of Criminal Procedure" unless certain exceptions apply. 18 U.S.C. § 981(b)(1), (2).

16. Pursuant to 18 U.S.C. § 981(b)(3), "[n]otwithstanding the provisions of rule 41(a) of the Federal Rules of Criminal Procedure, a seizure warrant may be issued pursuant to this subsection by a judicial officer in any district in which a forfeiture action against the property may be filed under [28 U.S.C. § 1355(b)], and may be executed in any district in which the property is found, or transmitted to the central authority of any foreign state for service in accordance with any treaty or other international agreement."

17. Venue for a forfeiture action is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in the District of New Hampshire. Further, venue is proper in this district pursuant to 28 U.S.C. §§ 1355(b)(1)(B),

1395(a), which permit a civil proceeding for forfeiture to "be prosecuted in the district where it accrues or the defendant is found."

18. Pursuant to 28 U.S.C. § 1355(b)(2), "[w]henever property subject to forfeiture under the laws of the United States is located in a foreign country, or has been detained or seized pursuant to legal process or competent authority of a foreign government, an action or proceeding for forfeiture may be brought as provide in paragraph (1), or in the United States District Court for the District of Columbia."

19. For the reasons listed above, the United States seeks a combined criminal and civil seizure warrant authorizing law enforcement to seize the SUBJECT FUNDS and preserve them pending further forfeiture proceedings.

## FUNGIBILITY OF FUNDS

20. Title 18 U.S.C. § 984 provides that fungible property such as cash, monetary instruments in bearer form, or funds in a financial institution, whether or not directly traceable to an offense, may be subject to forfeiture up to one year from the date of the offense. This section does not limit the ability of the United States to forfeit property that is directly traceable to the offense. 18 U.S.C. § 984(d).

21. 18 U.S.C. § 981(b), which authorizes the seizure of the property subject to forfeiture, requires a showing of probable cause, but does not require a showing that less restrictive means may not be sufficient to secure the funds.

22. The criminal seizure warrant statute, 21 U.S.C. § 853(f), requires the court to determine that a restraining order, an injunction, or a temporary restraining order as provided by 21 U.S.C. § 853(e), may not be sufficient to assure the property for forfeiture.

23. However, the Court is entitled to infer from the inherent fungibility and

transferability of money in a bank account that a restraining order under section 853(e) would be inadequate. *United States v. Swenson*, No. 1:13-cr-00091-BLW, 2013 WL 3322632, at *5 (D. Idaho July 1, 2013); *United States v. Wiese*, No. 09-20414, 2012 WL 43369, at *2-3 (E.D. Mich. Jan. 9, 2012); *United States v. Martin*, 460 F.Supp.2d 669, 677 (D. Md. 2006), aff'd 662 F. 3d 301, 304 n.6 (4th Cir. 2011).

24. Moreover, "[t]here is no requirement under § 853(f) in particular, or in any seizure warrant in general, and the court has located no case to the contrary, that the Judicial Officer issuing the seizure warrants is required explicitly to state that a restraint under § 853(e) may not have sufficiently assured the availability of funds." *Wiese*, 2012 WL 43369, at *2.

25. When tracing tainted money through a series of bank accounts, the Government may use several reasonable methods –"e.g., that the first funds to be deposited into a bank account are the first to be withdrawn (the 'first in, first out' or FIFO rule); that the last funds to be deposited are the are the first to be withdrawn ('the last in, first out' or LIFO rule), or that the tainted funds that the Government is seeking to trace will always be the last to be withdrawn from the account (the 'lowest intermediate balance' rule)." Stefan D. Cassella, Asset Forfeiture Law in the United States (3d ed. 2022), at 564-565.

**STATEMENT OF PROBABLE CAUSE**

26. On or about June 21, 2025, Santander Bank provided information on suspicious financial transactions they identified involving accounts belonging to Person 1 and Company A. Person 1's listed occupation was a gift shop clerk. Person 1 is the sole account holder for Santander checking account number 8954499708 ("Target Account 1") and Company A is the account holder for Santander primary account number 8291059276 ("Target Account 2").

27. Santander Bank conducted a review of the Target Accounts between December 20,

2024, through June 20, 2025. These suspicious transactions included Automated Clearing House (ACH) transfers, incoming wires, and fictious/altered checks which funded outgoing wires to multiple other persons, external peer-to-peer (P2P) transfers via CashApp, and digital currency purchases. Santander Bank determined the activity to be suspicious based upon frequent large-dollar transactions coming and going from the Target Accounts which were inconsistent with Person 1's banking history and business.

28. U.S. Secret Service Personnel conducted a database check through the Federal Bureau of Investigations ("FBI"), Internet Crimes Complaint Center ("IC3"), on Target Account 1 and Target Account 2. This check showed Victim 1 filed a complaint on or about June 26, 2025.

29. Victim 1 is the Chief Financial Officer for a medical company located in the United States. Victim 1's company routinely purchases raw materials from their vendor ("Vendor 1"). On or about June 17, 2025, the Financial Controller for Vendor 1 called Victim 1 asking for payment status on the three most recent invoices which Vendor 1 had not received payment for. Victim 1 reviewed communications with Vendor 1 and identified that on or about April 14, 2025, Victim 1 received an email which appeared to come from Vendor 1. The email, which was fraudulent, requested that Victim 1 send payment to a different bank account from before. The fraudster spoofed Vendor 1's email address by changing an "**I**" to a lowercase "**L**" (**l**). All other information in the email appeared to be authentic.

30. The fraudulent email from the spoofed email address requested Victim 1 change the payee bank account information to Target Account 2. Based on those instructions, Victim 1 sent the following payments totaling over $300,000 to Target Account 2:
Transactions:

1. Type: ACH Payment

8

   Date: 04/25/2025

   Amount: $100,000.00

2. Type: ACH Payment

   Date: 04/25/2025

   Amount: $36,591.00

3. Type: ACH Payment

   Date: 05/15/2025

   Amount: $65,825.50

4. Type: ACH Payment

   Date: 06/12/2025

   Amount: $102,999.00

31. Victim 1 was unsuccessful in recovering the funds.

32. On or about October 16, 2025, I had a phone call with Victim 1. Victim 1 confirmed the aforementioned facts and requested law enforcement's assistance with recovering the funds.

33. Victim 2 works for a home building company. On or about June 4, 2025, Victim 2 filed a complaint. Victim 2 reported he received three calls from different clients who received emails requesting payment via wire transfer. These emails appeared to come from Victim 2. The clients emailed Victim 2 the information they received. One client also had an invoice attached requesting payment. Victim 2 said the invoice was very convincing and at first glance looked legitimate. The emails sent to each of the three clients requested payment for amounts actually due on each client's account. Victim 2 suspected his business was hacked and that the fraudsters may have accessed his email and business records.

34. One of Victim 2's clients was asked to send $48,194.58 to Target Account 2.

35. I spoke with Victim 2 on or about October 3, 2025. Victim 2 confirmed the aforementioned facts. Victim 2 reported that none of his clients suffered a loss because they suspected the emails, they received were fraudulent.

36. I and another agent spoke with Person 1 on or about September 11, 2025. Person 1 lives in Greenville, New Hampshire. I told Person 1 that we were there to discuss potentially fraudulent activity. Person 1 agreed to a voluntary, non-custodial interview.

37. Person 1 said she wasn't sure what we were referencing until we mentioned that we had been working with Santander Bank which had frozen her funds in a couple different accounts.

38. Person 1 said she owned and operated Company A, which was her design and art business. Company A provides landscape lighting, interior designs, and helps purchase stuffed animals as interior design pieces. Person 1 confirmed that the Target Accounts at Santander referenced above belonged to her and her company.

39. Person 1 stated that she was recently paid $200,000 for a landscape lighting job she had completed that took her "a long time," specifically two days. I asked whether she was suspicious she received $200,000 for two days of work. Person 1 responded "kind off" but added she was then instructed to send those funds elsewhere. Person 1 said "Cliff" instructed her to forward the funds. Person 1 thought Cliff was her romantic partner. Person 1 and Cliff have spoken on the phone but never met in person.

40. Person 1 initially stated that most funds she received in her personal and business accounts were from "clients" paying for her interior design services that she provided via Company A.

41. However, during the conversation, it was evident that Person 1 was victim of a romance scam and was being utilized as a money mule. Person 1 stated she had about five or six

10

other accounts at other financial institutions she used to move funds, and that the accounts were all closed by the respective financial institutions for fraudulent activity.

42. Person 1 provided documentation from Santander Bank dated August 31, 2025, for Target Account 1 and Target Account 2. The documents showed a balance in Target Account 1 of approximately $90,376.13 and a balance in Target Account 2 of approximately $13,065.00. The total amount for both accounts as of August 31, 2025, is approximately $103,441.13.

43. As mentioned above, on June 16, 2025, Victim 1 sent $102,999 to Target Account 2. A review of documentation dated October 22, 2025, provided by Santander Bank for Target Account 2 shows that on June 17, 2025, approximately $90,000 out of the $102,999 was transferred into Target Account 1. The remainder of Victim 1's funds remain in Target Account 2.

44. The Target Account 1 balance just prior to that $90,000 credit was $110.31. After the $90,000 deposit, Target Account 1's balance became $90,110.31.

45. Person 1 made additional debits from that account totaling $333.31 over the next few days. Therefore, the end balance of Target Account 1 is $89,777.

46. Based on the lowest intermediate balance rule, which assumes that illicit funds are the last to be expended, the Target Account 1 balance consists entirely of Victim 1's funds.

47. According to Santander Bank, the end account balance of Target Account 2 is $13,065. Based on the lowest intermediate balance rule, that balance also consists entirely of Victim 1's funds.

48. Therefore, the SUBJECT FUNDS in Target Accounts 1 and 2 total $102,842.

49. Santander Bank has frozen both accounts due to identified fraudulent activity. Person 1 gave me a letter from Santander dated September 2, 2025, advising her that the bank was freezing and closing Target Accounts 1 and 2.

50. I advised Person 1 she was being used to launder illicitly obtained funds. I gave her a money mule warning letter and reviewed it with her.

51. Person 1 willingly signed the money mule warning letter and was left copy for her records.

52. Person 1 willingly agreed to surrender all remaining funds in Target Account 1 and Target Account 2 to the U.S. Secret Service.

53. Therefore, while law enforcement may already have the authority to seize the SUBJECT FUNDS in Target Accounts 1 and 2, I seek this warrant out of an abundance of caution.

## CONCLUSION

54. In summary, based on information derived from the foregoing investigation, there is probable cause to conclude that the SUBJECT FUNDS are subject to forfeiture to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 982(a)(1) because they are property involved in, or traceable to, money laundering and money laundering conspiracy in violation of 18 U.S.C. §§ 1956 and/or 1957; pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) because they constitute or are derived from proceeds traceable to wire fraud and wire fraud conspiracy in violation of 18 U.S.C. §§ 1343 and/or 1349; and pursuant to 18 U.S.C. § 982(a)(2)(A) because they constitute or are derived from proceeds obtained as the result of wire fraud and wire fraud conspiracy affecting a financial institution in violation of 18 U.S.C. §§ 1343 and/or 1349.

55. I submit that this affidavit supports probable cause for a combined criminal and civil seizure warrant authorizing the seizure of the SUBJECT FUNDS.

Respectfully Submitted,

/s/ Christopher McMahon
Christopher McMahon
Special Agent
U.S. Secret Service

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on November 14, 2025:

_____
HONORABLE TALESHA SAINT-MARC
UNITED STATES MAGISTRATE JUDGE

13

**Attachment A**

**Description of Property to be Searched**

The locations to be searched are Santander Bank accounts (1) 8954499708 ("Target Account 1") and (2) 8291059276 ("Target Account 2").

This warrant will be executed by serving the warrant on Santander Bank, which will then transfer the property detailed in Attachment B to the U.S. Secret Service via cashier's check(s).

**Attachment B**

**Description of Items to be Seized**

The items to be seized are $89,777 cash from Target Account 1 and $13,065 cash from Target Account 2.